1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10                        ----oo0oo----

11  UNITED STATES OF AMERICA,
                                    NO. CIV. 07-0452 FCD KJM
12          Plaintiff,

13      v.                          MEMORANDUM AND ORDER

14  APPROXIMATELY $15,630.00 IN
    U.S. CURRENCY, APPROXIMATELY
15  $8,000.00 IN U.S. CURRENCY,
    APPROXIMATELY $12,639.97 IN
16  MONEY ORDERS, APPROXIMATELY
    $60,517.00 IN U.S. CURRENCY,
17  APPROXIMATELY $14,271.00 IN
    U.S. CURRENCY, APPROXIMATELY
18  $90,000.00 IN U.S. CURRENCY,
    APPROXIMATELY $1,820.50 IN
19  MONEY ORDERS, AND
    MISCELLANEOUS SMOKELESS
20  TOBACCO PRODUCTS,

21          Defendants.

22                        ----oo0oo----

23      This matter is before the court on claimants[1] Jawid Wahidi

24  ("Jawid"), LMS International, Inc. ("LMS"), Sadiq Wahidi

25  _____

26      [1]  Defendants in this case are the currency and
    miscellaneous smokeless tobacco products seized by the government
27  at claimants' residences. (Compl., filed Mar. 7, 2007, ¶ 4.) By
    this action, the government seeks forfeiture of the currency on
28  the ground it is the proceeds of, or traceable to, mail fraud; it
    seeks forfeiture of the tobacco products as contraband not
    legally possessed by anyone. (Opp'n, filed May 24, 2007, at 1.)

("Sadiq"), and LA International, Inc.'s ("LA Int'l") motion to transfer venue pursuant to 28 U.S.C. § 1404(a).  Claimants do not challenge the propriety of venue in the Eastern District of California, but argue that the Central District of California is the more appropriate forum.[2]  Plaintiff United States of America (the "government") opposes the motion.

For the reasons set forth below, claimants' motion is DENIED.[3]

**BACKGROUND**

Claimant Jawid owns LMS, a wholesale store located at 101 East 3rd Street in Los Angeles, California.  (Notice of Mot. and Mot. to Dismiss, filed Apr. 29, 2007 ["Mot'n"], at 3.)  Claimant Sadiq was the president of LA Int'l, a wholesale store located at 340 East 3rd Street in Los Angeles, California.  (Mot'n at 3-4)

The complaint alleges that claimants are involved in an extensive illegal network of trafficking "other tobacco products" ("OTP"), i.e. chewing tobacco, from Arizona to California. (Frederick Aff., filed Mar. 3, 2007, at ¶ 6.)  Akrum Alrahib ("Alrahib") owns Sunrise Tobacco, Save a Buck Distribution, and Da Bomb Products, which are all located at 7600 North 71st Avenue in Glendale, Arizona.  (Id. at ¶ 9.)  Alrahib orders large quantities of OTP from manufacturers and national suppliers that he then distributes throughout California.  (Id. at ¶ 23.)  Ali

---

[2]  Claimants originally contested venue in the Eastern District but then conceded venue is proper in their reply to plaintiff's opposition.  (Reply, filed June 4, 2007, at 3.)

[3]  Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs.  E.D. Cal. L.R. 78-230(h).

2

1   Tavaf Langroudi ("Tavaf")--the owner of Smart Buy Wholesale
2   located at 213 East 3rd Street in Los Angeles, California--
3   receives much of Alrahib's OTP. (Id. at ¶ 25.) Tavaf then
4   distributes the OTP to numerous companies including claimants LMS
5   and LA Int'l. (Id.) The government alleges this entire
6   distribution process circumvents California's and Arizona's
7   excise tax on OTP, resulting in a nearly fifty percent profit for
8   the participants, and conversely, a substantial loss to the
9   government.

10      California law requires sellers and purchasers of OTP to
11  submit monthly tax returns to the California Board of
12  Equalization ("BOE") and pay excise taxes on the sales. The
13  government contends that claimants significantly under-reported
14  its OTP purchases and thus underpaid the corresponding excise
15  taxes due. (Frederick decl., filed May 24, 2007, at ¶ 3.) From
16  January 2004 through October 2006, claimants LA Int'l and LMS
17  filed fifty tobacco returns to the BOE in Sacramento. (Opp'n at
18  3-4.)

19      Defendants in this case are property seized at LMS, LA
20  Int'l, Jawid's residence, and Sadiq's residence during a
21  comprehensive federal investigatory raid on October 17, 2006.[4]
22  United States Magistrate Judge Jennifer T. Lum of the Central
23  District of California signed the search warrant authorizing the
24  search of claimants' premises and the seizure of the subject
25  property. (Mot'n at 7.) All of the defendant property was
26  seized in the Central District. (Id. at 3.) In addition to the

27
28      [4] See supra note 1.

3

1   defendant property, other property was seized including numerous

2   financial and business records of claimants. (Opp'n at 4-5.)

3   These records were later transferred to the Bureau of Alcohol,

4   Tobacco, Firearms, and Explosives ("ATF") for the Eastern

5   District of California for analysis for use in this action as

6   well as for possible use in a related criminal mail fraud

7   investigation. (Frederick decl. at ¶¶ 5-10.)

8      Claimants contend venue should be transferred to the Central

9   District because the search and seizure occurred in the Central

10   District and claimants reside there. Claimants assert they will

11   be substantially burdened by litigating this case in the Eastern

12   District and that any burden to the government is outweighed by

13   the harm to them.

14      The government asserts to the contrary that venue should

15   remain in the Eastern District because its choice of forum must

16   be given substantial weight; claimants mailed their tax returns

17   to the BOE in Sacramento; the numerous documents seized at LMS,

18   LA Int'l, Jawid's residence, and Sadiq's residence are being held

19   by the ATF in Sacramento; the government's witnesses are based in

20   the Eastern District and would be severely burdened by a transfer

21   to the Central District.

22                             **STANDARD**

23      Under 28 U.S.C. § 1404(a), a district court may "for the

24   convenience of parties and witnesses, in the interest of justice

25   . . . transfer any civil action to any other district where it

26   might have been brought." 28 U.S.C. § 1404(a). A court has

27   broad discretion in deciding whether or not to transfer venue

28   pursuant to 28 U.S.C. § 1404(a). E. & J. Gallo Winery v. F. & P.

1   <u>S.p.A.</u>, 899 F. Supp. 465, 466 (E.D. Cal. 1994).  A defendant

2   moving to transfer venue under Section 1404(a) must satisfy both

3   of the following requirements: (1) the transferee district is one

4   in which the action might have been brought originally; and (2)

5   transfer will enhance the convenience of the parties and

6   witnesses, and is in the interests of justice.  <u>See</u> <u>Van Dusen v.</u>

7   <u>Barrack</u>, 376 U.S. 612, 616 (1964).  In considering the second

8   requirement, the court evaluates the following:

9             (1) the plaintiff's choice of forum, (2) the
             convenience of the parties, (3) the convenience
10            of the witnesses, and (4) the interest of
             justice.

11

12  <u>L.A. Memorial Coliseum Comm'n v. Nat'l Football League</u>, 89 F.R.D.

13  497, 499 (C.D. Cal. 1981).

14                              **ANALYSIS**

15      Venue is proper in the Central Disctrit of California

16  because a substantial part of the events took place there.  28

17  U.S.C. § 1391(b)(2).  Thus, the only question before the court is

18  whether transfer to the Central District will enhance the

19  "convenience of parties and witnesses" and will promote "the

20  interests of justice."  28 U.S.C. § 1404(a).

21      The moving party has the burden of establishing that an

22  action should be transferred.  <u>Commodity Futures Trading Comm'n</u>

23  <u>v. Savage</u>, 611 F.2d 270, 279 (9th Cir. 1979).  Unless the balance

24  is strongly in favor of the defendant, the plaintiff's choice of

25  forum should rarely be disturbed.  <u>Gulf Oil Corp. v. Gilbert</u>, 330

26  U.S. 501, 508 (1947).

27      Here, claimants have not satisfied their burden.  The

28  government did not arbitrarily choose to litigate this case in

                                   5

1  the Eastern District of California.  All of the law enforcement

2  officers working on this case are based in Sacramento.  (Opp'n at

3  9-10.)  The seized records are located and being analyzed in

4  Sacramento.  (Id. at 10.)  Also, the government's attorneys, who

5  are based in the Eastern District, represent that they would

6  continue to litigate this case even if it was transferred to the

7  Central District because they have been involved in the case from

8  the outset of the investigation and are litigating other related

9  cases.  (Id. at 11.)  Under these circumstances, the court finds

10 that transferring this action to the Central District of

11 California would cause a significant burden to the government.

12        Moreover, while it is true that all of the property was

13 seized in the Central District and brought here by the government

14 for its own reasons, it is not true, as claimants contend, that

15 claimants have no connection to the Eastern District.  (Mot'n at

16 3.)  Claimants allegedly filed fifty fraudulent tax returns to

17 the BOE office in Sacramento.  (Opp'n at 10.)

18        Additionally, eleven other cases which have been spawned by

19 this federal investigation involving the OTP trafficking scheme

20 are pending in the Eastern District.  These cases, while not

21 consolidated, have been ruled related and are pending before the

22 undersigned.  (Related Case Order, filed May 3, 2007.)  The

23 government asserts that the documents presently held in

24 Sacramento for this case may be necessary for the related

25 matters.[5]  (Frederick decl. at ¶ 7, 10.)  These circumstances

26

27        [5]  In addition, the government represents that an indictment
   in the ongoing criminal investigation involving claimants and the
28                                                          (continued...)

6

1   further persuade the court that venue should not be transferred.

2

3   Despite these facts, claimants contend that the convenience

4   of the parties warrants transfer to the Central District.   The

5   court acknowledges that Jawid works in Los Angeles and perhaps

6   may be unable to operate his store during trial in the Eastern

7   District; however, the court finds no authority supporting

8   transfer on this basis alone.   Indeed, the cases claimants cite

9   in support of transfer based on Jawid's business disruption are

10  distinguishable.   Those cases dealt with transfer between *distant*

11  states.   See United States v. Russell, 582 F. Supp. 660 (S.D.N.Y.

12  1984) (transfer from New York to Tennessee); United States v.

13  Olen, 183 F. Supp. 212 (S.D.N.Y. 1960) (transfer from New York to

14  Alabama); United States v. Cashen, 281 F.2d 669 (2d Cir. 1960)

15  (transfer from New York to Alabama).   Trial in Sacramento, as

16  opposed to Los Angeles, should not present Jawid with similar

17  difficulties.   As to Sadiq, his burden is minimal.   He is retired

18  from work and his wife's generalized "poor health" is not

19  sufficient to warrant transfer.   (Mot'n at 9.)

20  As to the convenience of the witnesses, this factor is often

21  regarded as the most important in determining whether transfer of

22  venue is proper.   United States v. One Oil Painting, 362 F. Supp.

23  2d 1175, 1185 (C.D. Cal. 2005).   A clear balance of

24  inconvenience, however, must be shown; a court will not transfer

25  venue to shift the inconvenience of one party and witnesses to

26

27          [5](...continued)

28  related cases is likely and would be litigated in the Eastern
    District.   (Frederick decl. at ¶¶ 7, 10.)

7

1 the other.  <u>See</u> <u>Van Dusen v. Barrack</u>, 376 U.S. 612, 645-46

2 (1964); Schwarzer, et al., <u>Cal. Practice Guide</u>, 4:786 at 91

3 (2006).

4      Claimants argue that their witnesses will be burdened if the

5 trial is held in the Eastern District.  The government contends

6 that claimants' witnesses will be largely irrelevant because it

7 will base its case primarily on the business records held in

8 Sacramento. (Opp'n at 9.)  Additionally, the government asserts

9 that some of claimants' proposed witnesses would likely not

10 testify as they too are subjects of the same criminal

11 investigation.  (<u>Id.</u>)  On the other hand, the government's

12 witnesses are Sacramento-based government employees.  These

13 witnesses also would be burdened by litigation in a forum where

14 they do not live and work.  Thus, it appears that both sides'

15 witnesses may be burdened by litigation in a forum in which they

16 do not reside and work.  When the inconvenience of the

17 alternative venues is comparable "the tie is awarded to the

18 plaintiff" and there is no basis for a change of venue.  <u>In Re</u>

19 <u>National Presto Indus., Inc.</u>, 347 F.3d 662, 665 (7th Cir. 2003).

20      However, claimants nevertheless contend that inconvenience

21 to *government* witnesses is not significant, but they cite no

22 authority for their argument.  (Mot'n at 15.)  In fact, there is

23 authority supporting the contrary position.  Courts have held

24 that a government agency's choice of forum is entitled to the

25 same deference as a private party.  <u>Id.</u> at 665 ("When government

26 lawyers and investigators incur time and travel costs to litigate

27 in a remote forum, the burden falls on the taxpayer, who finances

28 the federal government and who is not less worthy of the

protections of the law than corporate officers, shareholders, and
employees."); see Schwarzer, et al., Cal. Practice Guide, 4:760
at 88 (2003).  In National Presto, the Securities and Exchange
Commission ("SEC") sued National Presto Industries ("Presto") in
the Northern District of Illinois.  National Presto, 347 F.3d at
663.  Presto moved to transfer the case to the Western District
of Wisconsin, arguing that multiple factors supported a transfer
of venue.  Id. at 664.  These factors included that its potential
witnesses resided in the Western District, the original documents
in the case were located in the Western District, and the Northen
District of Illinois had a heavier docket than the Western
District.  Id.  The court refused to transfer venue to the
Western District despite acknowledging that the only factors in
favor of venue remaining in Illinois were the convenience to the
SEC and the SEC's choice of forum.  Id.

    Claimants attempt to distinguish National Presto,
emphasizing that there, the SEC did not have an office in the
transferee district.  Here, claimants stress that the government
could litigate this case from its offices in the Central
District.  While this fact is true, it does not compel the court
to transfer venue.  As recognized by the court in SEC v. Savory
Indus., Inc., 587 F.2d 1149, 1155 (D.C. Cir. 1978), an office in
the transferee district is more relevant to the question of
whether the choice of that district is convenient to the
plaintiff, as opposed to the weight given to a plaintiff's choice
of forum.  In Savory, the SEC sued Savory Industries, Inc., S.
Mort Zimmerman, and others in the District of Columbia.  Savory,
587 F.2d at 1152.  Zimmerman moved to transfer venue to the

Northern District of Texas.  _Id._ at 1153.  The district court
denied the motion without comment.  _Id._  On appeal, one of
Zimmerman's arguments was that the SEC's choice of forum should
be accorded little, if any, significance because the SEC had an
office in the Northern District of Texas.  _Id._ at 1155.  The
appellate court disagreed.  It ruled that an office in the
transferee district was not a compelling factor.  _Id._ at 1156.
The court finds similarly here, particularly given the extensive
nature of this federal investigation, which has been performed by
law enforcement officers in this district and which has
generated, to date, twelve related cases pending in this
district.

**CONCLUSION**

     Claimants have not met their burden to show that the
convenience of the parties and witnesses and the interests of
justice warrant transfer of this case.  Therefore, claimants'
motion for transfer of venue is DENIED.

     IT IS SO ORDERED.

DATED: June 25, 2007.

                              _____
                              FRANK C. DAMRELL, JR.
                              UNITED STATES DISTRICT JUDGE