UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

UNITED STATES OF AMERICA;

    Plaintiff,

    v.

APPROXIMATELY $15,630.00 IN U.S. CURRENCY, APPROXIMATELY $8,000.00 IN U.S. CURRENCY, APPROXIMATELY $12,639.97 IN MONEY ORDERS, APPROXIMATELY $60,517.00 IN U.S. CURRENCY, APPROXIMATELY $14,271.OO IN U.S. CURRENCY, APPROXIMATELY $90,000.00 IN U.S. CURRENCY, APPROXIMATELY $1,820.50 IN MONEY ORDERS, AND MISCELLANEOUS SMOKELESS TOBACCO PRODUCTS,

    Defendants.

NO. CIV. 07-452 FCD KJM

MEMORANDUM AND ORDER

----oo0oo----

This matter is before the court on claimants' Jawid Wahidi ("Wahidi") and LMS International, Inc. ("LMS") (collectively, "claimants") motion to suppress evidence seized from Wahidi's residence at 215 West Seventh, Los Angeles, California, pursuant to a search warrant issued by United States Magistrate Judge Jennifer T. Lum. Claimants contend that the search of Wahidi's

residence violated the Fourth Amendment to the United States Constitution in that the search warrant was not supported by probable cause to believe that evidence of alleged tax violations would be found at Wahidi's residence.  Plaintiff, United States of America ("plaintiff"), opposes claimants' motion.  For the reasons set forth below, the court DENIES claimants' motion.[1]

**BACKGROUND**

On October 12, 2006, United States Magistrate Judge Lum issued a search warrant for the search of nineteen businesses and residences, including claimant Wahidi's residence and claimant LMS's place of business.  (Pl.'s Compl., filed March 7, 2007, Ex. A.)  Trista K. Frederick, Special Agent of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, applied for the warrant on a written affidavit.  (Pl.'s Compl. ¶¶ 5-6.)  The affidavit alleged that claimants were involved in an illegal scheme to defraud the State of California of excise taxes due from the sale of tobacco products called "other tobacco products" ("OTP"), which includes smokeless tobacco and cigars. (Aff., attached as Ex. A to Pl.'s Compl., ¶¶ 88-97.)

The alleged fraudulent scheme centered around untaxed purchases and sales of OTP.  (Id. ¶¶ 5-8.)  Persons violate federal laws if they are licensed by the State of California to engage in the purchase and sale of tobacco products and they fail to comply with California laws regarding accounting, tax, and payment requirements.  (Id. ¶ 5.)  Unlicensed persons or licensed

---

[1]  Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. E.D. Cal. Local Rule 78-230(h).

2

persons not complying with California's accounting, tax, and payment laws may not possess specified quantities of smokeless tobacco under federal law, and smokeless tobacco in the possession of such persons is contraband. (Id.)

Agent Frederick conducted the investigation leading up to the application for the search warrant in conjunction with Investigator Clayton Beckwith of the California Board of Equalization ("BOE").[2] Agents from the Arizona Department of Revenue, the Federal Bureau of Investigations, and the Phoenix Police Department were also involved in the investigation. (Aff. ¶ 3.) The investigation uncovered a large-scale scheme to distribute untaxed OTP received in Arizona and shipped to California for the purpose of avoiding state excise taxes. (Aff. ¶ 6.) BOE estimates that this scheme cost the State of California over $30,000,000 in tax revenue between January 2004 to July 2005. Id. The affidavit also relates that most of the receivers of untaxed OTP, including claimants, are licensed by BOE but not in compliance with California's accounting, tax, and payment requirements relating to their licenses because, among other things, (1) they have failed to report or under-reported purchases and distributions of untaxed OTP; (2) do not have proper invoices for OTP: and (3) have not paid the required excise taxes on OTP. Therefore, their receipt, possession, and

///

---

[2] Investigator Beckwith has been investigating tax fraud for over ten years. He has had extensive training in several relevant tax fraud investigation techniques and has participated in more than 10 search warrants obtained by BOE or other law enforcement agencies. (Aff. ¶ 2.)

3

distribution and sale of OTP violates 18 U.S.C. § 2342.[3] (Aff. ¶ 7.)

The investigation also revealed that claimant LMS is owned by claimant Wahidi, and at the time Agent Frederick applied for the search warrant, LMS had a sales tax permit and wholesaler's and distributor's licenses for OTP. (Aff. ¶ 88.) Aside from being listed on customer lists of untaxed OTP suppliers and cell phone records of calls between LMS and untaxed OTP suppliers, (Aff. ¶¶ 49, 88, 91, 92), the affidavit states that analysis of LMS bank records and tax returns suggested that LMS purchased untaxed OTP and failed to properly report the purchases and the resulting taxable distributions. BOE claims that LMS under reported taxable purchases by $122,943 in July and September of 2004. (Aff. ¶ 89.) The affidavit discloses several other instances of LMS's under-reporting and failure to report untaxed OTP purchases and taxable distributions. (See Aff. ¶¶ 88-97.) Thus, plaintiff concludes that LMS's possession of OTP on the date of the search warrant was a violation of 18 U.S.C. § 2342. (Aff. ¶ 97.)

The affidavit also includes statements by Investigator Beckwith and BOE Investigator Tim Raboy to Agent Frederick regarding their firsthand experiences with search warrants of

---

[3] 18 U.S.C. § 2342(a) provides that "It shall be unlawful for any person knowingly to ship, transport, receive, possess, sell, distribute, or purchase contraband cigarettes or contraband smokeless tobacco." 18 U.S.C. § 2341(7) defines "contraband smokeless tobacco" as a quantity in excess of 500 single unit consumer-sized containers or packages of smokeless tobacco that are in possession of any person other than a person licensed by the State and who has complied with the State's accounting, tax, and payment requirements.

4

residences. (Aff. ¶ 167.) Investigator Beckwith told Agent Frederick that based on his experience, OTP and evidence of the possession and distribution of OTP, essentially business records, are commonly found in an individual's place of business and at the individual's residence. Investigator Beckwith also believes that licensees often take their business records home to avoid discovery at the business location. During each of Investigator Beckwith's approximately 10 searches of private residences, he discovered business records relating to the alleged crimes in the respective affidavits.[4] BOE Investigator Tim Raboy related to Special Agent Frederick that in each of the twelve OTP related searches of residences he has been involved in, 60-70% of the business records obtained in the residences related directly to OTP, 15-20% related to the operation of the OTP business, and 15-20% were other business records. (Aff. ¶ 167.)

Based upon these facts, the search warrant authorized agents to search for evidence and contraband related to the alleged fraudulent scheme, including income tax records, excise tax records, specific business records, banking records, real estate and vehicle records, computers, currency, and other specific records at LMS's place of business and Wahidi's residence. (See Aff. Attachment B.) During the execution of the warrant, officers found $8,000 in cash, which the government is seeking to forfeit; a sales invoice for tobacco and a check to LMS for

---

[4] Approximately six of Investigator Beckwith's searches related to OTP cases and the other four related to tax evasion. Of the six OTP related searches, 70% of the business records located in the residences related directly to OTP, 15-20% related to the operation of the OTP business, and 15-20% were other business records. (Aff. ¶ 167.)

5

$3,087; written invoices not in compliance with California law; packing lists for tobacco products shipped and sold to a business in Nevada; untaxed tobacco products purchased in Nevada; several types of OTP; two safe deposit box keys; and an IRS notice of an appointment to verify compliance with the reporting requirement involving cash payments exceeding $10,000.  (Pl.'s Opp'n ¶ II.A.)

**STANDARD**

When reviewing the validity of a search warrant, the court must "ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed."  Illinois v. Gates, 462 U.S. 213, 237-39 (1983) (quoting Jones v. United States, 362 U.S. 257, 271 (1960)); United States v. Stanert, 762 F.2d 775, 779 (9th Cir. 1985).  Moreover, a magistrate is charged with making a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Stanert, 762 F.2d at 778-79 (citing Gates, 462 U.S. at 238).  A reviewing court may not reverse a magistrate's conclusion unless it is "clearly erroneous."  United States v. Estrada, 773 F.2d 683, 684 (9th Cir. 1984).  "A deferential standard of review is appropriate to further the Fourth Amendment's strong preference for searches conducted pursuant to a warrant."  Massachusetts v. Upton, 466 U.S. 727, 733 (1984).

///
///

6

**ANALYSIS**

Claimants contend that the search of Wahidi's residence violated the Fourth Amendment because the search warrant was not supported by probable cause to believe that evidence of tax violations would be found in Wahidi's residence. Claimants also contend that the affidavit does not provide evidence of a connection between the alleged tax violations committed by claimants and Wahidi's residence. Plaintiff responds that, in light of all the circumstances, probable cause existed to believe that evidence of the alleged tax violations would be found inside Wahidi's residence and that the affidavit showed evidence of a connection between the alleged violations and Wahidi's residence.

### A.   Probable Cause Existed to Search Wahidi's Residence

The affidavit demonstrated a "fair probability" that contraband or evidence of the alleged tax violations would be found at Wahidi's residence. See Gates, 462 U.S. at 238. The affidavit described the nature and scope of the alleged criminal scheme in detail and included statements from Investigator Beckwith explaining that in 100% of the approximately ten residential searches he has conducted, business records have been found. (Aff. ¶ 167.) Specifically as to OTP related residential searches, Investigator Beckwith reported that "60-70% of the business records located in the residences related directly to OTP, 15-20% related to the operation of the OTP business and 15-20% were other business records." Id. Also, Investigator Raboy's statements that of his OTP related searches, 60-70% of the business records located in the residence were directly related to OTP supports a conclusion that OTP-related evidence

7

would be found in Wahidi's residence. See id. Therefore, a magistrate judge could reasonably conclude that there was a significant probability that contraband or evidence of the alleged tax violations would be found in Wahidi's residence.

The Ninth Circuit has held that similar representations by government agents established probable cause to believe that business records would likely be found in a target's residence. See United States v. Sayakhom, 186 F.3d 928, 934 (9th Cir. 1999). In Sayakhom, the court upheld a search warrant where the affiant stated that operators of businesses that involve paperwork "typically maintain and carry business records into and out of their offices, in their cars and to and from their residences." Id. Thus, a fair reading of the affidavit and Ninth Circuit precedent support a finding that probable existed to search Wahidi's residence.

**B.   The Affiant's Reliance on the Training, Experience, and Observations of Fellow Officers is Warranted**

Claimants object to the affidavit's use of other law enforcement officers' "hearsay" statements based on the officers' experience and expertise. It is well established that "a magistrate may consider hearsay statements in an affidavit in determining whether there is probable cause. . . ." United States v. Castillo, 866 F.2d 1071, 1077 (9th Cir. 1983) (citing Gates, 462 U.S. at 238); United States v. Guerrero, 756 F.2d 1342, 1348-49 (9th Cir. 1984) (a magistrate can consider hearsay statements in an application for a search warrant if there is a substantial basis for crediting the hearsay), cert. denied, 469 U.S. 934 (1984). Moreover, "observations of fellow officers of

8

the government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number." United States v. Ventresca, 380 U.S. 102, 111 (1965); see also United States v. Spears, 965 F.2d 262, 277 (7th Cir. 1992) (holding that a magistrate could regard an affiant's fellow law enforcement officers as reliable sources).

Not only were Investigators Beckwith and Raboy engaged in a common investigation concerning Wahidi, but both investigators have significant training and experience, including actually discovering business records during the execution of approximately twenty-two search warrants at residences in similar cases. (Aff. ¶ 167.) For this reason, claimants' reliance on United States v. Schultz, 14 F.3d 1093 (6th Cir. 1994) is misplaced. In Schultz, the court held that a search warrant was not supported by probable cause because the affiant surmised that evidence would be found in a safe deposit box without support for his belief other than his training and experience. Id. at 1097-1098. The court held, "Officer Ideker did not have anything more than a guess that contraband or evidence of a crime would be found in the boxes, and therefore the first warrant should not have been issued." Id. Unlike Schultz, Investigators Beckwith and Raboy draw on their extensive experience and the *actual* results from their numerous residential searches involving OTP and tax evasion investigations. Thus, the basis of this search warrant differs from the search warrant in Schultz in particularity and substance.

Further, the warrant does not rest solely on the investigators' statements, but also contains numerous other facts

9

that when taken together with the investigators' statements demonstrate the reasonableness of the magistrate judge's conclusions, including the extensive investigation conducted by law enforcement officers. (Aff. ¶¶ 88-95.)  For example, the affidavit contains information pertaining to surveillance at Wahidi's business, LMS; tax returns submitted by LMS which appear to under-report taxable OTP purchases; and telephone records. Id.  These facts combined with Investigator Beckwith's and Raboy's frequent discovery of evidence of similar crimes at residences provide a reasonable basis upon which the magistrate judge could rely when issuing the warrant.

**C. Even If No Probable Cause Existed to Search Wahidi's Residence, the Good Faith Exception is Applicable**

The good faith exception to the exclusionary rule applies when law enforcement officers reasonably rely on a search warrant issued by a detached and neutral magistrate judge that is later found invalid. United States v. Leon, 468 U.S. 897,919-20 (1984); See also United States v. Hendricks, 743 F.2d 653, 656 (9th Cir. 1984) (declining to apply the exclusionary rule though the warrant supporting a search was held invalid because the officer's reliance on the warrant was not unreasonable).  Here, there is no evidence that the issuing magistrate judge abandoned her detached and neutral role, or that Agent Frederick was dishonest or reckless in preparing her affidavit.  Therefore, even if the warrant lacked probable cause, the officers reasonably relied on the warrant in a good faith execution of their duties.

Claimants erroneously cite <u>Schultz</u> to support their proposition that the good faith exception should not apply in this case. While <u>Schultz</u> held that the warrant in question lacked probable cause, the court *upheld* the search under the good faith exception. The court found that the nexus between the alleged crime and the location to be searched was close enough that a reasonable officer could rely on the warrant. <u>Schultz</u>, 14 F.3d at 1098. Similarly, Agent Frederick had probable cause to believe that claimants committed several crimes related to untaxed OTP and when combined with Investigator Beckwith's and Raboy's discoveries of evidence and contraband in similar searches, Agent Frederick had a reasonable basis for relying on the search warrant.

Claimants also suggest that the good faith exception is inapplicable where the affiant relies only on hearsay. In support of this proposition, claimants cite <u>United States v. Weaver</u>; however, plaintiff correctly points out that <u>Weaver</u> expressly states, to the contrary, that hearsay can be used to establish probable cause. 99 F.3d 1372, 1377 (6th Cir. 1998). The evidence in <u>Weaver</u> was suppressed because the "only claim of possible wrongdoing" contained in the affidavit came from an informant who stated that three days earlier he was inside a residence and saw marijuana "expressly for the purpose of unlawful distribution." <u>Id.</u> at 1378. The affiant included no additional facts to support his beliefs, no information pertaining to an independent investigation by the affiant, nor any information pertaining to the informant's reliability in the past. <u>Id.</u> at 1379. Conversely, the affidavit in this case

11

includes significant, detailed information regarding the extensive investigation undertaken by experienced law enforcement officers into claimants' alleged criminal activity.  Moreover, none of the information supplied to establish probable cause in this case came from an informant.

Lastly, claimants rely on United States v. Weber, 923 F.2d 1338 (9th Cir. 1991).  The affidavit in Weber relied on information that the defendant had been sent advertisements described by a customs agent as "apparently" child pornography and on an expert opinion that was drafted without the particular facts of the case in mind.  Id. at 1344.  The court found the affidavit was overbroad and did not establish probable cause to believe that contraband would be found in the defendant's residence.  Id.  In the present case, the warrant was narrowly tailored to the circumstances, and probable cause for the residential search was supported by the BOE investigators' personal experiences that persons who engage in fraud related to the tobacco sales keep business records in their residences.

**CONCLUSION**

///
///
///
///
///
///
///
///
///

1    In sum, claimants' argument is an attempt to engage the
2 court in a technical review of the affidavit, rather than the
3 practical, common-sense approach mandated by Gates.  Because the
4 court concludes that the search of Wahidi's residence did not
5 violate the Fourth Amendment in that the search warrant showed
6 probable cause for the seizure of the items from Wahidi's
7 residence, or in the alternative, that the good faith exception
8 to the exclusionary rule applies, claimants' motion to suppress
9 is DENIED.
10    IT IS SO ORDERED.
11 DATED: September 7, 2007.

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE